UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AVOMEEN HOLDINGS, LLC,

    Plaintiff,

v.

SHRI THANEDAR, ET AL.,

    Defendants.
_____/

Case No. 17-cv-13703

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
ANTHONY P. PATTI

**OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [#28] AND MAINTAINING FUTURE SCHEDULING DATES**

**I. INTRODUCTION**

Plaintiff Avomeen Holdings, LLC initiated this securities fraud action on November 14, 2017, alleging violations of Securities and Exchange Act Rule 10(b) and SEC Rule 10b-5. Dkt. No. 1. In addition, Plaintiff raises several claims arising under state law. *Id.*

Present before the Court is Defendants Shri Thanedar and Chemreal, LLC's Motion for Summary Judgment. Dkt. No. 28. The Court will resolve the matter without a hearing. *See* E.D. Mich. LR 7.1(f)(2). For the reasons set forth below, the Court will DENY the Motion [#28].

## II. BACKGROUND

This action arises out of an Equity Purchase Agreement, under which Defendant Thanedar sold Plaintiff a majority interest in Avomeen, LLC (hereinafter "Avomeen") -- a chemical testing laboratory. Dkt. No. 1, p. 1 (Pg. ID 1). In July 2016, Plaintiff furnished and Defendant Thanedar accepted a Letter of Intent ("LOI") to purchase Avomeen for a pre-adjustment sale price of $30 million, plus an earn-out of up to $5 million depending on the company's 2016 EBITDA.[1] *Id.* Under the LOI, the transaction was subject to several conditions precedent, including a four-month period of accounting and business due diligence. *Id.*

Plaintiff asserts that in pre-close discussions with its representatives, Defendant Thanedar made several representations that proved to be inaccurate. *Id.* at p. 9 (Pg. ID 889). Most glaring, Defendant Thanedar represented that the vast majority (90% or more) of Avomeen's revenue for a given month was recognized upon 100% completion of a project for a client. *Id.* He noted only three types of projects that fell outside of this general rule. *Id.* at p. 10 (Pg. ID 890). After the sale was completed, however, Defendant Thanedar revealed that it was Avomeen's practice that "projects that [were] 90% or more completed in a month [were] billed in the end of that month." Dkt. No. 32-21, p. 3 (Pg. ID 1095).

---

[1] Earnings Before Interest, Tax, Depreciation, and Amortization.

Andrew Kolbert, who reported directly to Defendant Thanedar, asserts that Thanedar made this change in September 2016 in order to inflate monthly revenue for certain months leading up to the sale of Avomeen. Dkt. No. 32-15, pp. 5-6 (Pg. ID 1061-62). But Plaintiff's expert witness -- Certified Public Accountant J. Bradley Sargent -- suggests Avomeen's improper reporting practices manifested much earlier. *See* Dkt. No. 28-13, p. 24 (Pg. ID 456). Namely, between October 1, 2015 and September 30, 2016, Avomeen had been pulling revenue from future months into present months to create a false appearance of steady growth. *See id.* at pp. 24-27 (Pg. ID 456-59). This practice, which Sargent likened to a Ponzi scheme, led to an estimated $634,530 in improperly recognized revenue during that twelve-month period. *See id.*

At some point prior to close, the parties agreed to modify the terms of the original LOI. Dkt. No. 28-11. Rather than pay a base price of $30 million with a potential $5 million earn-out, Plaintiff would now pay a guaranteed price of $33.6 million. *Id.* Plaintiff asserts that the purpose of this change was to avoid potential disputes about what items fell inside or outside of the final adjusted EBITDA calculation. Dkt. No. 32-3, p. 5 (Pg. ID 969). Further, that it felt comfortable with this change because Avomeen had reported strong revenue earnings for several months in a row. *Id.* Defendants, in contrast, characterize this change as a reduction in price, and maintain that the reduction was prompted by concerns that

Avomeen would not meet its revenue goal for the month of October, and consequently, its projected EBITDA for the year. Dkt. No. 28, p. 14 (Pg. ID 275).

In any case, Avomeen did enter into a revenue slump beginning in October 2016. *Id.* at p. 13 (Pg. ID 274). One of Plaintiff's representatives testified that they were expecting Avomeen's revenue for the months of October and November to be close to $1 million, as opposed to the $800,000 and $900,000 actually generated. Dkt. No. 28-4, p. 5 (Pg. ID 319). Still, Plaintiff opted to move forward with the purchase and the parties closed their transaction on November 7, 2016. *Id.*; Dkt. No. 32, p. 8 (Pg. ID 888). Plaintiff purchased Avomeen's securities for $33.6 million and is now the majority owner of the company. *Id.* Defendant Chemreal, LLC -- an entity controlled by Defendant Thanedar -- continues to hold a minority interest in the company.

Plaintiff brings the instant suit, asserting it was induced into overpaying for Avomeen due to alleged misrepresentations by Defendant Thanedar surrounding Avomeen's monthly revenue earnings. Plaintiff contends that it suffered damages in the range of $6,995,077 to $7,980,445. *Id.* at p. 17 (Pg. ID 897).

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) empowers a court to grant summary judgment if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Cehrs v. Ne. Ohio Alzheimer's*

*Research Ctr.*, 155 F.3d 775, 779 (6th Cir. 1998). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1968). There is a genuine issue of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Mere allegations or denials in the non-movant's pleadings will not suffice, nor will a mere scintilla of evidence supporting the non-moving party. *Id.* at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *Id.* at 252.

## IV. DISCUSSION

### A. Plaintiff has Standing to Assert a Rule 10b-5 Claim.

As an initial matter, Defendants assert that Plaintiff lacks standing to bring a claim under Rule 10b-5. Defendants put forth several arguments, none of which are persuasive.

"Rule 10b-5 prohibits 'mak[ing] any untrue statement of material fact' in connection with the purchase or sale of securities." *Janus Capital Grp, Inc. v. First Derivative Traders*, 564 U.S. 135, 137-38 *2011). "A party bringing a private action for money damages under Rule 10b-5 must be an actual purchaser or seller of securities." *Grubb v. Fed. Deposit Ins. Corp.*, 868 F.2d 1151, 1159 (10th

Cir. 1989) (citing *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 731-33 (1975)). "[I]t is not the case that plaintiffs must allege some *direct* communication with [the defendants] to state a claim under § 10(b)." *Benedict v. Cooperstock*, 23 F. Supp. 2d 754, 758 (E.D. Mich. 1998). Rather, "[s]ection 10(b) specifically provides that persons may not engage in prohibited conduct 'directly or indirectly.'" *Id.* In short, "plaintiffs must allege that [the defendants] made a false or misleading statement (or omission) in connection with the sale of a security that [they] knew or should have known would reach investors, and that the plaintiffs relied on it and were damaged." *Id.* (citing *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1226 (10th Cir. 1996)).

Here, Defendants cannot dispute that Plaintiff was the purchaser of Avomeen's securities. Indeed, Plaintiff holds a majority interest in the company and incurred over $16 million in debt in connection with the transaction. *See* Dkt. No. 32, p. 8 (Pg. ID 888). While Defendants argue that Plaintiff is simply a holding company, and that High Street Capital (private equity fund) was the underlying financer, the cases on which Defendants rely do not support their position that Plaintiff lacks standing. To the contrary, these cases, at best, stand for the proposition that a de facto investing entity may have standing to bring suit in addition to a holding company. *See, e.g.*, *Grubb*, 868 F. 2d at 1159-62, n.11

(recognizing for purposes of standing a suit filed on behalf of holding company and underlying shareholders).

In addition, Plaintiff has alleged facts suggesting Defendants made misleading statements in connection with the sale of Avomeen, and that Plaintiff relied on those statements and was damaged as a result. Though Defendants argue that the alleged misrepresentations were made to High Street Capital, and not directly to Plaintiff, a claim under Rule 10b-5 does not require proof of direct communication. *See Benedict*, 23 F. Supp. 2d at 758. Plaintiff can rely on Defendants' communications with High Street Capital because Defendants knew their representations would reach potential investors. *See id.* Accordingly, Plaintiff has alleged an injury sufficient to assert standing for a Rule 10b-5 claim.[2]

**B. The Indemnification Clause in the Equity Purchase Agreement does not Bar the Rule 10b-5 Claim.**

In passing, Defendants suggest that the indemnification clause contained within the parties' Equity Purchase Agreement bars the instant Rule 10b-5 claim. *See* Dkt. No. 36, p. 7-8 (Pg. ID 1751-52). However, the indemnification clause

---

[2] Defendants also argue that Plaintiff lacks standing because it cannot sue its own subsidiary. *See* Dkt. No. 28, pp. 17-18 *Pg. ID 278-79). This argument, however, ignores the fact that Plaintiff is suing Defendants for misrepresentations made prior to the acquisition of Avomeen. It is unclear why Defendants believe the acquisition now immunizes them from those prior alleged misrepresentations. Further, Defendants do not explain how the case law they cite supports their argument, if at all.

addresses only the parties' liabilities in the case of a third-party claim. Here, the suit is strictly between the parties to the Agreement. Accordingly, the Court finds that the indemnification clause does not bar Plaintiff's Rule 10b-5 claim.

**C. A Reasonable Juror Could Conclude that Defendants Violated Rule 10b-5.**

In order to prevail on a claim under § 10(b) of the Securities and Exchange Act and SEC Rule 10b-5, "a plaintiff must prove (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation. *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 157 (2008). Here, Defendants challenge Plaintiff's Rule 10b-5 claim on elements one, two, four, five, and six. The Court will discuss each of these challenges, in turn, below.

1. <u>Material Misrepresentation</u>

It is well established that "[m]isrepresented or omitted facts are material only if a reasonable investor would have viewed the misrepresentation or omission as 'having significantly altered the total mix of information made available.'" *In re Sofamor Danek Grp.*, 123 F.3d 394, 400 (6th Cir. 1997) (quoting *Basic, Inc. v. Levinson*, 485 U.S. 224, 232 (1988)). The test is necessarily fact intensive. *Saxe v.*

*Dlusky*, 268 F. App'x 438, 441 (6th Cir. 2008) (citing *Helwig v. Vencor, Inc.*, 251 F.3d 540, 555 (6th Cir. 2001)).

Here, Plaintiff has alleged three fabrications that Defendant Thanedar proffered during the parties' transaction: (1) the vast majority of Avomeen's revenue for a given month (with specific exceptions) was recognized only upon 100% completion of a project for a client, (2) Avomeen did not recognize revenue on a percentage-of-completion basis, and (3) Avomeen's financial statements were in accordance with Generally Accepted Accounting Principles ("GAAP"). *See* Dkt. No. 32, pp. 20-21 (Pg. ID 900-01). Considered together, Plaintiff contends that Defendant Thanedar engaged in a scheme of revenue shifting that resulted in approximately $634,530 of improperly recognized revenue between the months of October 2015 and September 2016. *See* Dkt. No. 28-13, pp. 24-27 (Pg. ID 456-59). Plaintiff claims this scheme created a false portrayal of Avomeen's growth and induced them to overpay for the company.

While Defendants acknowledge the possibility of inconsistencies surrounding Avomeen's revenue recognition practices, they argue this does not create liability under Rule 10b-5 for three reasons. First, Defendants maintain that Defendant Thanedar did not make any false statements. They refer to an August

25, 2016 email where Defendant Thanedar wrote to Plaintiff's representative stating the following:

> The vast majority (90% or more) of Avomeen's revenue is recognized upon 100% completion of a project. As referenced above, there are a few specific project types that are recognized as revenue before 100% completion.

*See* Dkt. No. 28-8, p. 2 (Pg. ID 354). Defendants argue this email demonstrates Thanedar fully disclosed that not all of Avomeen's revenue was recognized upon project completion. But this argument is difficult to accept in light of a letter Defendant Thanedar wrote to Plaintiff's representative several months after the parties' transaction closed, reading: "It is Avomeen's practice that projects that are 90% or more completed in a month are billed in the end of that month." *See* Dkt. No. 32-21, p. 3 (Pg. ID 1095). These two statements from Defendant Thanedar cannot be squared. Furthermore, Plaintiff's findings regarding the $634,530 in improperly recognized revenue already accounts for the specific project types that Thanedar identified as exceptions to the general rule. *See* Dkt. No. 32-25, pp. 3-4 (pg. ID 1115-16).

Second, Defendants argue that Plaintiff's representatives were aware that Avomeen engaged in revenue shifting, and thus, could not have been misled by Defendant Thanedar's representations. Defendants point to an email exchange between Thanedar and one of Plaintiff's representatives in February 2017, where

the two discussed keeping the month of January open so Avomeen could bill and recognize revenue for that month. *See* Dkt. No. 28-12. However, because this email exchange took place three months after the parties completed their transaction, it does not necessarily speak to Plaintiff's knowledge during the period leading up to close. While one might infer prior knowledge, this, at most, creates a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 587 (instructing the evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party).

Finally, Defendants argue that any inaccuracies in Avomeen's revenue reporting were immaterial in nature. Defendants posit that the alleged inflation in Avomeen's revenue during the snapshot period amounted to a small financial sum when compared to the company's total assets. But Defendants' argument is misplaced. Importantly, courts have routinely rejected the idea that small financial distortions can never be material.[3] Instead, courts take a more expansive approach, looking to factors such as "whether the misstatement arises from an item capable

---

[3] *See Hutchinson v. Deutche Bank Sec. Inc.*, 647 F.3d 479, 485 (2d Cir. 2011) ("We have consistently rejected a formulaic approach to assessing the materiality of an alleged misrepresentation. . . . According to SEC Staff Accounting Bulletin No. 99, the use of a percentage as a numerical threshold such as 5%, may provide the basis for a preliminary assumption of materiality, but a bright line percentage cannot be appropriately used as a substitute for full analysis of all relevant considerations.") (internal quotations and citations omitted); *USM Holdings Inc. v. Simon*, 2016 WL 4396061, at *5 (E.D. Mich. 2016) (recognizing even relatively small financial errors can be material).

of precise measurement" and "whether the misstatement masks a change in earnings." *See* SEC Staff Accounting Bulletin No. 99, 1999 WL 1123073, at *3 (Aug. 12, 1999).

Here, a reasonable juror could conclude that Defendant Thanedar's alleged misstatements surrounding Avomeen's revenue reporting practices were material. Indeed, these statements were not a matter of opinion. Rather, they involved objective representations that painted an inaccurate picture of Avomeen's growth -- a key factor in Plaintiff's decision to purchase the company.[4] And while Defendants argue that on net, the alleged revenue shifting did not increase Avomeen's overall EBITDA calculation, Defendant Thanedar acknowledged that any dip in monthly revenue growth put the transaction at risk.[5] Moreover, as will be discussed in the next section, there is evidence suggesting Defendant

---

[4] *See* Dkt. No. 32-3, p. 5 (Pg. ID 969) (Decl. Robert France: "If Mr. Thanedar had accurately portrayed Avomeen's performance to Purchaser, High Street, and Plante Moran, had accurately disclosed Avomeen's revenue recognition practices, or disclosed the changes to the practices that Avomeen employees have testified about, Purchaser would have either renegotiated or walked away from the transaction.").

[5] *See* Dkt. No. 32-4, pp. 7-8 (Pg. ID 977-78) (Dep. Shri Thanedar: "In the month of October, we set a goal of, I think only 800,000. Prior to October, the month of September, August, and July, I believe the monthly revenues were about a million. However, in October, it was looking like we're going to have a month that was going to be somewhere around $800,000 in revenue, which was a 20 percent drop, and I certainly wondered what will High Street -- how would High Street react to that.").

Thanedar's alleged deception was intentional. *See* SEC Staff Accounting Bulletin No. 99, 1999 WL 1123073, at *4 ("While the intent of management does not render a misstatement material, it may provide significant evidence of materiality. The evidence may be particularly compelling where management has intentionally misstated items in the financial statements to 'manage' reported earnings. In that instance, it presumably has done so believing that the resulting amounts and trends would be significant to users of the registrant's financial statements."). Accordingly, Plaintiff has met its burden at this stage of establishing a material misrepresentation.

2. Scienter

The second element of a Rule 10b-5 claim is scienter, defined as a "mental state embracing intent to deceive, manipulate or defraud." *In re Comshare Inc. Sec. Litig.*, 183 F.3d 542, 550 (6th Cir. 1999) (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194 (1976)). "In order to satisfy this element, the defendant must have acted with at least recklessness in making the misleading representation or omission." *USM Holdings*, 2016 WL 4396061, at *4. The appropriate inquiry "is whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized

in isolation, meets that standard." *Frank v. Dana Corp.*, 646 F.3d 954, 959 (6th Cir. 2011).

Here, when viewing the evidence in a light most favorable to the non-moving party, Plaintiff has satisfied its burden of establishing Defendant Thanedar acted with the intent to deceive, manipulate, or defraud. Tellingly, Defendant Thanedar acknowledged that Plaintiff could have walked away from the deal at any time and admitted that he had concerns about whether the transaction would actually close. *See* Dkt. No. 32-4, pp. 7-8 (Pg. ID 977-78). Part of this concern was based on the fact that he knew a drop in Avomeen's revenue during the four-month due diligence period could scare Plaintiff away. *Id.* at p. 8 (Pg. ID 978). When you couple this concern with the testimony of his former employees -- who claimed he changed Avomeen's revenue reporting practices in the months leading up to the sale, and purportedly for the purpose of inflating revenue -- a reasonable juror could conclude that Defendant Thanedar misrepresented Avomeen's performance and revenue earnings with the intent to deceive Plaintiff.[6] Only

---

[6] *See, e.g.*, Dkt. No. 32-7, p. 8 (Pg. ID 8) (Dep. Melissa Gransden: "[During] the months leading up to the sale, if the projects that were going to complete at the end of the month and went into the subsequent month, Shri would want to keep the subsequent month open longer and longer to ensure that that month would have the number that he felt was more acceptable."); Dkt. No. 32-8, p. 9 (Pg. ID 1023) (Dep. Andrew Kolbert: "Sometime between September 20th and September 30th, Shri came to my office and said, you know, the report doesn't have to be out to the client. It can be 90, 95 percent done, and we will count it for the month. And I

adding to this conclusion is the fact that Thanedar attempted to downplay Avomeen's impending revenue slump by misrepresenting the amount of business in the company's pipeline.[7]

   3. Reliance

The next element of a Rule 10b-5 claim requires the Court to assess whether Plaintiff reasonably relied on Defendant Thanedar's alleged misrepresentations. Defendants offer three arguments for why Plaintiff fails to satisfy its burden on this element.

First, Defendants argue that the integration clause contained within the parties' Equity Purchase Agreement makes reliance on a prior oral representation unreasonable *per se*. See Dkt. No. 28, p. 29 (Pg. ID 290). Section 7.3 of the Equity Purchase Agreement reads as follows:

---

presume the rationale was because they would increase revenue in the month of September.").

[7] See Dkt. No. 32-27, pp. 2-3 (Pg. ID 1120-21) (Decl. Kathleen Morgan: "In 2016 but prior to October 2016, I based the 'win' report on the 'date ready to begin' field in Salesforce. . . . When I used this field as the basis for the 'win' report, it demonstrated a current and accurate snapshot of the upcoming pipeline for the company. In October or early November 2016, Thanedar instructed me to change the 'win' report to be based on the 'won pending' field in Salesforce. . . . Projects could have a 'won pending' date entered for as little as a positive phone call with the customer suggesting that a project might be directed to Avomeen. When I used this field as the basis for the 'win' report, the report captured a broader set of potential projects, but because the 'won pending' date was farther removed from a project materializing, there was greater risk of inflated numbers.").

> 7.3 Entire Agreement. This Agreement, the Exhibits, the Disclosure Statement, the Company Ancillary Documents, the Purchaser Ancillary Documents and any other documents delivered by the parties hereto in connection herewith constitutes the entire agreement among the Parties hereto with respect to the subject matter hereof and supersedes all prior agreements and understandings among the Parties hereto with respect thereto. No addition to or modification of any provision of this Agreement shall be binding upon any Party hereto unless made in writing and signed by all Parties hereto.

Dkt. No. 32-2, pp. 30-31 (Pg. ID 944-45). Critically, however, the Sixth Circuit has rejected the *per se* rule that Defendants offer here. *See Brown v. Earthboard Sports USA, Inc.*, 481 F.3d 901, 921 (6th Cir. 2007) ("To erect a *per se* rule with respect to non-reliance clauses would undermine the essential point of undertaking a contextual analysis, and we do not choose to adopt such a blanket rule now."). Moreover, the integration clause in the parties' Equity Purchase Agreement is ambiguous as to its scope. In particular, it is not clear whether it embraces pre-contractual *representations*, as distinct from promises, made by either party. *See Galeana Telecomms. Invs., Inc. v. Amerifone Corp.*, 202 F. Supp. 3d 711, 726 (E.D. Mich. 2016) ("The merger clause in the Agreement between Galeana and Amerifone only encompasses 'all prior negotiations, letters and understandings.' Arguably, the clause's language does not include prior representations."). Because a reasonable juror could conclude that the integration clause does not encompass prior representations, the Court cannot find that Plaintiff's reliance on Defendant Thanedar's alleged misrepresentations was unreasonable.

Second, Defendants argue that the rationale for Plaintiff purchasing Avomeen makes the alleged misrepresentations irrelevant. *See* Dkt. No. 28, p. 28 (Pg. ID 289). Specifically, Defendants assert that because Plaintiff purchased the company for its potential, rather than for its present performance, it could not have relied on Defendant Thanedar's representations surrounding Avomeen's monthly revenue. Though creative, Defendants ignore the fact that the primary issue underlying this case is whether Plaintiff was induced into overpaying for Avomeen at a price of $33.6 million. Because Avomeen's monthly revenue earnings undoubtedly played a role in the parties' transaction, Plaintiff's rationale for purchasing the company does not make its reliance on Defendant Thanedar's alleged misrepresentations immaterial.

Finally, Defendants argue that Plaintiff fails to satisfy its burden on this element because it was a sophisticated investor with access to sufficient information to evaluate the statements in question. *See id.* at p. 27 (Pg. ID 288). But there are several defects in this reasoning. As a beginning point, the fact that Plaintiff is an investing firm, standing alone, does not preclude them from bringing suit under Rule 10b-5. *See, e.g.*, *Wright v. Nat'l Warranty Co.*, 953 F.2d 256, 261 (6th Cir. 1992) (rejecting argument that plaintiff's status as an "insider" foreclosed recovery under 10b-5). In addition, questions of material fact remain surrounding whether Plaintiff was given access to accurate, pertinent information. John

Samulak and Robert France, two of Plaintiff's representatives, testified that none of Plaintiff's advisers were given physical access to Avomeen's Salesforce system.[8] Dkt. No. 32-5, pp. 4-5 (Pg. ID 985-86); Dkt. No. 32-6, p. 5 (Pg. ID 1003). Further, that the information Defendant Thanedar provided from Salesforce did not match the company's Quick Books accounting data.[9]

In short, Plaintiff has presented evidence suggesting Defendant Thanedar intentionally misrepresented the state of Avomeen's finances and concealed these facts. This is especially true where at least one former high-ranking employee testified that Defendant Thanedar would not let him speak to anyone from Plaintiff's advisement team because Defendant Thanedar wanted to be in control of all communications. *See* Dkt. 32-8, p. 4 (pg. ID 1018). Given that Defendant Thanedar purportedly controlled the flow of information coming from Avomeen, a reasonable juror could conclude that Plaintiff's advisers relied on Defendant Thanedar's representations in making their decision to purchase the company.

---

[8] Salesforce is the company's client relationship management software.

[9] *See* Dkt. No. 32-5, p. 4 (Pg. ID 985) (Dep. of John Samuluk – Q: "So when you said that the information that came from Sales Force did not match, are you -- does that mean that the Sales Force information did not match what the Quick Books information showed?" A: "Correct."); *see also* Dkt. No. 32-9, p. 7 (Pg. ID 1033) (Dep. of Tyrone Tessmer – Q: "What information did you personally compile that you understood was going to be turned over to High Street Capital?" A: "Financials." Q: "What was in those financials that you considered to be false?" A: "I believe the revenue associated with certain periods of certain months were inaccurately reported.").

4. Economic Loss and Loss Causation

The final two elements of a Rule 10b-5 claim require the Court to examine economic loss and loss causation. The Sixth Circuit has instructed that loss causation requires "a causal connection between the material misrepresentation and the loss." *Brown*, 481 F.3d at 920 (quoting *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 342 (2005)).

Here, Defendants conflate both elements into one and raise a single argument. Defendants argue that because Plaintiff purchased Avomeen for its growth potential, and not its present performance, Defendant Thanedar's alleged misrepresentations could not have caused any economic loss. But again, Defendants fail to recognize that the crux of this suit is that Plaintiff claims it was induced into overpaying for Avomeen. Because Avomeen's monthly revenue earnings certainly played a role in the parties' transaction, the Court, for all of the reasons expressed earlier, finds Plaintiff has met its burden of demonstrating economic loss and loss causation.[10]

---

[10] In addition, Defendants reference an October 4, 2016 email sent between Plaintiff's representatives, suggesting it shows Plaintiff was aware Avomeen's revenue reporting practices had been altered, thereby severing any link between Defendant Thanedar's alleged misrepresentations and Plaintiff's economic loss. *See* Dkt. No. 28-15 ("Question – why do all periods for net revenue take company adjustment into account except for July? Why $1,085k vs. $1,039?"). The email appears to comment on a report attached in an earlier message, which Defendants failed to include. By not providing the attachment, the Court cannot determine

## V. Conclusion

For the reasons stated herein, the Court will DENY Defendants' Motion for Summary Judgment [#28]. The following future court dates remain in effect:

a. *In Limine* motion deadline of June 11, 2019;

b. Final Pretrial Order submission deadline for July 17, 2019;

c. Final Pretrial Conference for July 24, 2019, at 4:00 p.m.; and

d. Trial shall commence on July 30, 2019, at 9:00 a.m.


IT IS SO ORDERED.

Dated:   April 15, 2019

                                              s/Gershwin A. Drain
                                              HON. GERSHWIN A. DRAIN
                                              United States District Court Judge


### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, April 15, 2019, by electronic and/or ordinary mail.

                                              s/Teresa McGovern
                                              Case Manager

---

whether the email says what Defendants purport it says. Plaintiff maintains that Defendants have taken the email out of context. Regardless, this creates a genuine issue of material fact, making summary judgment inappropriate.