UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


AVOMEEN HOLDINGS, LLC,

    Plaintiff,

    v.

SHRI THANEDAR, ET AL.,

    Defendants.

_____/

Case No. 17-cv-13703

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
ANTHONY P. PATTI


**OPINION AND ORDER DENYING DEFENDANTS' MOTION IN LIMINE TO EXCLUDE THE TESTIMONY, OPINIONS, REPORTS, AND DECLARATIONS OF PLAINTIFF'S EXPERT WITNESS, J. BRADLEY SARGENT [#49/50] AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE CERTAIN TESTIMONY OF DEFENDANTS' EXPERT WITNESS, RODNEY L. CRAWFORD [#47]**

### I. INTRODUCTION

This action arises out of an Equity Purchase Agreement, under which Defendant Shri Thanedar sold Plaintiff a majority interest in Avomeen, LLC ("Avomeen") -- a chemical testing laboratory. Plaintiff asserts that in pre-close discussions with its representatives, Defendant Thanedar made several inaccurate representations that inflated the value of the company. Plaintiff has thus filed the instant suit, asserting it was induced into overpaying for Avomeen.

Present before the Court are two Motions in Limine. First, Defendants have filed a Motion in Limine to Exclude the Testimony, Opinions, Reports, and Declarations of Plaintiff's Expert Witness, J. Bradley Sargent. Dkt. No. 49/50. Second, Plaintiff has filed a Motion in Limine to Exclude Certain Testimony of Defendants' Expert Witness, Rodney L. Crawford. Dkt. No. 47. The Motions are fully briefed, and the Court will resolve both without a hearing. *See* E.D. Mich. LR 7.1(f)(2). For the reasons set forth below, the Court will DENY Defendants' Motion [#49/50] and GRANT IN PART AND DENY IN PART Plaintiff's Motion [#47].

## II. LEGAL STANDARD

A motion in limine refers to "any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40, n.2 (1984). The purpose of these motions is "to narrow the issues remaining for trial and to minimize disruptions at trial." *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999). In disposing of a motion in limine, the guiding principle is to "ensure evenhanded and expeditious management of trials." *Ind. Ins. Co. v. GE*, 326 F. Supp. 2d 844, 846 (N.D. Ohio, 2004).

Under Federal Rule of Evidence 702, "an expert's opinion is admissible, by the discretion of the trial court, if: (1) the expert is qualified as such by knowledge,

skill, experience, training or education; (2) the testimony is relevant, meaning it will assist the trier of fact to understand the evidence or to determine a fact in issue; and (3) the testimony is reliable, meaning it is based on sufficient facts or data, is the product of reliable principles and methods, and the witness has applied the principles and methods reliably to the facts of the case." *Little Hocking Water Ass'n, Inc. v. E.I. du Pont de Nemours and Co.*, 90 F. Supp. 3d 746, 751 (S.D. Ohio 2015) (citing *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528-29 (6th Cir. 2008)). "The task for the district court in deciding whether an expert's opinion is reliable is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation." *Id.* at 752. "Where the reliability of the evidence is in dispute, it is more appropriate for a judge to admit the evidence than to keep it from the fact-finder because 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Id.* (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 596 (1993). Stated differently, "rejection of expert testimony is the exception, rather than the rule." *In re Scrap Metal*, 527 F.3d at 530.

# III. Discussion

### A. The Court will Deny Defendants' Motion to Exclude the Testimony, Opinions, Reports, and Declarations of Plaintiff's Expert Witness, J. Bradley Sargent [#49/50].

Defendants ask the Court to exclude the testimony, opinions, reports, and declarations of Plaintiff's expert witness, J. Bradley Sargent. Sargent, who is a Certified Public Accountant, performed an analysis of the Avomeen transaction and made the following findings and conclusions:

a) Thanedar, in his capacity as Avomeen's Chairman and Interim CEO, was intimately involved with and exerted control over accounting methodology, specifically regarding revenue recognition.

b) At Thanedar's direction, Avomeen's accounting practices for revenue recognition changed materially in 2016 and violated Generally Accepted Accounting Principles ("GAAP") and Generally Accepted Auditing Standards ("GAAS").

c) Thanedar made misrepresentations to the plaintiff and/or the plaintiff's agents that were material in nature.

d) Due to Thanedar's acts, Avomeen's earnings before interest, taxes, depreciation and amortization ("EBITDA") for the period of October 1, 2015 through September 30, 2016 were overstated by at least $634,530.

e) Due to Thanedar's acts, the plaintiff utilized an earnings multiple which was above market and overstated.

f) As a result of the material overstatements of EBITDA and the earnings multiple applied by the plaintiff, the plaintiff should have paid $25,619,555 to $26,604,923 for Avomeen. The plaintiff paid $33,600,000, an overpayment resulting in economic damages of at least $6,6995,077 to $7,980,445.

*See* Dkt. No. 50, p. 8 (Pg. ID 3294). Defendants contend that the first three findings are inappropriate because they reach legal and factual conclusions meant for the jury to resolve. They assert that the latter three findings are not based on reliable methodology or on the factual record in this case.

1. Sargent's Opinions and Findings will not be Excluded on the Basis that they Touch on Legal and/or Factual Questions.

Defendants first argue that Sargent should not be permitted to testify because his opinions -- that Defendant Thanedar was intimately involved with and exerted control over Avomeen's accounting methodology, and that Avomeen made changes to its accounting practices at the direction of Thanedar -- reach conclusions on disputed facts that are solely the jury's province. Defendants provide no legal authority to support their argument. Nevertheless, the law is clear that an expert witness may offer an opinion at trial despite their reliance on disputed facts. *See Gonzales Prod. Sys., Inc. v. Martinrea Int'l, Inc.*, 2015 WL 4771096, at *10 (E.D. Mich. Aug. 13, 2015) (Drain, J.) (citing with approval *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1392 (Fed. Cir. 2003) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one's expert's testimony); *Pipitone v. Biomatrix*, 288 F.3d 239, 249-50 (5th Cir. 2002) (holding that jury was entitled to hear expert testimony and decide whether to accept or reject it after considering whether predicate facts on which expert relied were accurate)).

Here, Sargent's expert report sets forth the factual basis underlying the opinions referenced above. The report reveals that Sargent predicated his opinions on the deposition testimony of several employees who worked under Defendant Thanedar at Avomeen, as well as a number of documents found in the record. *See* Dkt. No. 50-2, pp. 9-18 (Pg. ID 3326-35). The Court will not exclude Sargent's opinions on the ground that Defendants dispute their factual underpinnings. *See Gonzales*, 2015 WL 4771096, at *10. Instead, Defendants can challenge the accuracy of Sargent's testimony on cross-examination.

Additionally, Defendants ask the Court to exclude a portion of Sargent's testimony where he purportedly reached an improper legal conclusion. Specifically, Defendants point to Sargent's opinion that Defendant Thanedar made "misrepresentations" that were "material in nature." Defendants argue that this conclusion opines on an explicit element of a Rule 10b-5 claim, which is at issue in this case. *See Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 157 (2008) ("[A] plaintiff must prove (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation."); *see also Keyes v. Ocwen Loan Servicing, LLC*, 335 F. Supp. 3d 951, 959 (E.D. Mich. 2018) (Drain, J.) ("[E]xpert witnesses are not permitted to make legal

conclusions."); *Alvarado v. Oakland Cty.*, 809 F. Supp. 2d 680, 688 (E.D. Mich. 2011) ('[T]he expert's opinion must stop short of embracing the 'legal terminology' which frames the ultimate legal conclusion which the jury must reach in the case."); *Woods v. Lecureux*, 110 F.3d 1215, 1221 (6th Cir. 1997) (Testimony "which attempts to tell the jury what result to reach and which runs the risk of interfering with a district court's jury instructions, hardly can be viewed as being helpful to the jury."). But even if so, "[a]n opinion is not objectionable just because it embraces an ultimate issue." FRE 704(a); *see Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994) ("Although an expert's testimony may embrace an ultimate issue to be decided by the trier of fact, the issue embraced must be a factual one.") (internal quotations and citations omitted).

Within the context of securities litigation, "[c]ourts routinely allow expert testimony regarding whether undisclosed information, or information that was later disclosed, was material." *S.E.C. v. ITT Educ. Servs.*, 311 F. Supp. 3d 977, 995 (S.D. Ind. 2018) (citing *S.E.C. v. Ferrone*, 163 F. Supp. 3d 549, 565 (N.D. Ill. 2016); *United States v. Martoma*, 993 F. Supp. 2d 452, 457 (S.D.N.Y. 2014)). In *ITT Educational Services*, the Southern District of Indiana explained the difference between an impermissible legal conclusion and a permissible factual finding:

> Defendants seek to exclude Dr. Thakor's testimony regarding what investors would have wanted to know and the materiality of that information, arguing that his opinion "goes to the ultimate issue of whether Defendants engaged in securities fraud under the securities laws." The Court disagrees. Dr.

> Thakor's opinions differ significantly from the opinions of Mr. Pitt and Mr. Kisner that the Court has excluded. Mr. Pitt and Mr. Kisner both sought to provide opinions regarding whether Defendants provided adequate disclosures in their SEC filings. Dr. Thakor's opinion relates to whether information that Defendants did not disclose (which is a factual question) would have been the type of information investors would have wanted to know—whether that information was material.

*Id.* (internal citations omitted). Plaintiff maintains that Sargent's findings fall into latter category, and thus, do not reach a legal conclusion. *See* Dkt. No. 65, p. 20 n.2 (Pg. ID 4860) ("Mr. Sargent primarily uses the word 'material' in his report to discuss accounting materiality."). But out of precaution, Plaintiff does not object to having Sargent replace the word "material" with some other term. *See id.* The Court finds that this is an appropriate solution. Accordingly, rather than exclude this portion of Sargent's testimony, the Court will ORDER the parties to come to an agreement on an alternative descriptor for Sargent to use during trial.[1]

While on the topic of language, Defendants also take issue with Sargent's likening of Avomeen's revenue recognition practices to a "Ponzi Scheme" or "Pulling Scheme." Defendants argue that such descriptors have no basis in fact,

---

[1] To the extent that Defendants take issue with Sargent's use of the term "misrepresentation," the Court will overrule this objection. Misrepresentation is a term used commonly to describe a false or misleading action. Sargent's expert report uses the term in this commonly understood form to describe Defendant Thanedar's actions as they relate to this case. Furthermore, the ultimate legal issue for the jury to reach is whether these alleged misrepresentations were "material." Because a misrepresentation, alone, would not suffice for liability under Rule 10b-5, the Court finds no danger in the use of this term.

and further, would lead to unfair prejudice due to the negative connation that these terms carry. The Court will disagree.

Sargent's expert report suggests that he derived the term "Pulling Scheme" from the fact that Defendants were allegedly "pulling revenue from future reporting periods into the current period." *See id.* at p. 28 (Pg. ID 3345). This is a fair description of Defendants' alleged acts, and the term "scheme," in and of itself, is not overtly prejudicial. Similarly, the phrase "Ponzi Scheme" is not unduly prejudicial, especially where the comparison has merit:

> The pulling scheme, much like an investor Ponzi scheme, relied on continued growth of future cash inflows to sustain current performance. When inflows stopped growing, there was no more revenue to pull. In other words, the future revenue cupboards were bare while employees continued to work on projects that had been previously recognized.

*Id.* at p. 27 (Pg. ID 3344). Sargent has a sufficient basis for his analogy, and any potential danger of prejudice can be curtailed through cross-examination. Accordingly, the Court will Deny Defendants' request to prevent Sargent from utilizing the terms "Ponzi Scheme" and "Pulling Scheme."

2. Sargent's Opinions and Findings are Based on Reliable Methodology and the Factual Record in this Case.

Defendants next ask the Court to exclude Sargent's testimony on the basis that his damages calculations are not based on reliable methodology or on the factual record in this case. Defendants raise a variety of arguments, which the Court will address in turn.

i.    **Argument #1:** Sargent did not Conduct a Business Valuation of Avomeen.

Defendants first argue that because Sargent did not conduct a business valuation of Avomeen -- specifically, that he did not "perform recognized valuation procedures" -- he cannot accurately assess how much Plaintiff allegedly overpaid for the company.  But noticeably absent from Defendants' argument is any legal authority suggesting that an expert witness must perform a specific set of valuation procedures to support a damages analysis.

Defendants do, however, cite to Section 100 of the AICPA Valuation Services Standards, and assert that this requires all Certified Public Accountants to perform designated valuation procedures before providing an opinion on valuation.[2]  But Defendants stop short of explaining what those designated valuation procedures entail, or how Sargent's methodology falls short of these requirements.  *See United States v. L.E. Cooke Co., Inc.*, 991 F.2d 336, 342 (6th Cir. 1993) ("[A]ny weakness in the factual basis of an expert witness' opinion,

---

[2] *See* VS § 100.23 (In performing a valuation engagement, the valuation analyst should do the following: Analyze the subject interest; Consider and apply appropriate valuation approaches and methods; Prepare and maintain appropriate documentation.); VS § 100.42 (In arriving at a conclusion value, the valuation analyst should (a) correlate and reconcile the results obtained under the different approaches and methods used; (b) assess the reliability of the results under different approaches and methods using the information gathered during the valuation engagement; and (c) determine, based on items a and b, whether the conclusion of value should reflect (i) the results of one valuation approach and method, or (ii) a combination of the results of more than one valuation approach and method.)

including unfamiliarity with standards, bear on the weight of the evidence rather than on its admissibility.").  Further, as a CPA who regularly consults with lawyers and their clients on disputed issues related to business valuation, Sargent is more than qualified to offer his expert opinion on the topic.  *See* Dkt. No. 50-2, p. 7 (Pg. ID 3324).  Accordingly, the Court will not exclude Sargent's testimony on this basis.

ii. <u>**Argument #2:**</u> **Sargent's Opinion Regarding EBITDA Multipliers is Contrary to the Factual Record.**

Defendants next argue that Sargent employed a methodology to calculate Plaintiff's damages that is contrary to how the parties negotiated the purchase and sale of Avomeen.  Specifically, Defendants assert that Sargent calculated damages using an EBITDA[3] multiplier, despite the parties rejecting the EBITDA multiple approach in favor of a fixed sale price.

Defendants are correct, and Plaintiff does not dispute, that the parties ultimately agreed to modify their deal structure to reflect a set closing value of $33.6 million, as opposed to $30,000,000, with a potential earn-out of up to $5,000,000 based on an adjusted EBITDA calculation.  *See* Dkt. No. 50-4; Dkt. No. 65-2, p. 2 (Pg. ID 4869).  But Defendants ignore the fact that this change was prompted, at least in part, by Defendant Thanedar's alleged misrepresentations

---

[3] Earnings Before Interest, Tax, Depreciation, and Amortization.

regarding Avomeen's financial health.[4]  Moreover, Defendant Thanedar

acknowledged that he knew potential buyers would likely use an EBITDA multiple

to calculate the amount they might offer for Avomeen.[5]  And, Defendants' expert

witness, Rodney Crawford, even conceded that Plaintiff contemplated an EBITDA

multiple when it was evaluating Avomeen's purchase price.[6]  The Court therefore

---

[4] *See* Dkt. No. 49-6 (Decl. Robert France) ("After Mr. Thanedar reported revenue of over $1 million for September and over $400,000 in EBITDA that month, and in reliance to a significant extent on the consistent, strong, revenue in excess of $1 million/month that Mr. Thanedar had reported for several months, the deal team proposed a slightly modified deal that changed the structure from $30 million plus an earn-out of up to $5 million to a closing value of $33.6 million.  Mr. Thanedar's strong result reports for several months in a row was one primary reason for this change, together with a desire to better align the parties' post-close and avoid disputes about what items should fall inside or outside of an adjusted EBITDA calculation.).

[5] *See* Dkt. No. 65-1, p. 3 (Pg. ID 4866) (Thanedar Dep.) (Q: And what relevance did EBITDA have to the transaction in your -- in your mind?  A: Well, valuation of a business in a transaction, there are multiple valuation methods that are being used by potential buyers, and EBITDA or a multiple of EBITDA is one of the valuation method but not the only valuation method used to buy buyers.); (Q: So you understood back in 2016 prior to the sale of Avomeen that at least some of the potential purchasers of the business would look to EBITDA and apply some multiple in order to determine a potential value they might offer for the company?  A: Yes.).

[6] *See* Dkt. No. 65-3, p. 7 (Pg. ID 4881) (Crawford Dep.) (Q: You would agree that the spreadsheets that the purchaser had in connection with the transaction certainly contemplated a multiple to EBITDA as they were evaluating purchase price, correct?  A: They calculated various, multiples as part of the analysis, yes.); and

Dkt. No. 67-5, p. 9 (Pg. ID 5657) (Crawford Expert Rpt.) ("In my opinion the Sargent's Report's use of an EBITDA multiple of alleged premature revenue recognition amounts is both inappropriate and improperly computed.  However,

finds that Sargent's opinions have a sufficient connection to the facts of this case. Accordingly, his testimony will not be excluded on this basis. *See L.E. Cooke Co., Inc.*, 991 F.2d at 342 ("The Federal Rules of Evidence allow an expert great liberty in determining the basis of his opinions and whether an expert opinion should be accepted as having an adequate basis is a matter for the trier of fact to decide."); *see also Kerby v. Parsons Corp.*, 2007 WL 2069857, at *5-6 (W.D. Wash. July 16, 2007) (While the contract did not expressly contemplate a purchase price based on an EBITDA multiple, plaintiff remains "free to argue at trial that the Shareholders alleged misrepresentations damaged [plaintiff] in EBITDA terms, and [plaintiff] is similarly free to argue that some multiplier of EBITDA is the appropriate measure of loss.").

    iii.    **<u>Argument #3:</u>** **Sargent's Theory that some Projects were Incomplete is Unreliable.**

Defendants' third argument is that Sargent lacks a sufficient evidentiary basis to conclude that Defendants recognized revenue on projects that were incomplete. The Court finds this argument unpersuasive.

---

evidence exists that the buyer did rely primarily on an 'income approach' in its valuation of Avomeen, computing both an Internal Rate of Return ("IRR") based on a future cash flow projection and an EBITDA multiple in the financial projection and valuation model it used in connection with the transaction. The enterprise value was largely based on intangible asset valuation and the Buyer's expectation that they could quickly grow the business to over $17 million in annual sales and then exit the business with a sale transaction by the year 2020.").

As set forth in Sargent's expert report, he identifies projects that were recorded within a given period that should have been recorded after the period. He then explained how he made these determinations:

> I made this determination based on the source documents available. I considered the timing of identified deliverables (as previously identified) as well as the timing of the actual "delivery," typically in the form of an email to the customer. I was conservative in my analysis. The only projects that I deemed to be improperly recognized had direct evidence that the project was not complete in the period the revenue was recognized. In cases where I could find no evidence of a deliverable at all, I assumed proper recognition. I identified $634,530 in revenue which was recognized between October 1, 2015 and September 30, 2016 which should have been recognized *after* the period (*see* Exhibit C-1).

Dkt. No. 50-2, p. 24 (Pg. ID 3342). Sargent thus provides an adequate foundation for his findings. To the extent that Defendants refute the underlying factual basis for his opinions, this goes to the accuracy of Sargent's opinions, not their admissibility. *See Keyes v. Ocwen Loan Servicing, LLC*, 335 F. Supp. 3d 951, 956 (E.D. Mich. 2018) ("[A]ny issue regarding the credibility or accuracy of admitted expert testimony goes to the weight of the evidence, and can be addressed via cross-examination and 'presentation of contrary evidence' by opposing counsel."). Accordingly, the Court will not exclude Sargent's testimony on this ground.

iv.   <u>**Argument #4:**</u> **Sargent Failed to Determine the Net Impact of Premature Revenue Recognition During the Snapshot Period.**

Fourth, Defendants argue that Sargent, who found that Defendants prematurely recognized $634,530 in revenue between October 2015 and

September 2016, failed to account for the net effect of revenue that would have been prematurely recognized before this period. Defendants contend that if he had, this would have offset Sargent's findings by $432,988. *See* Dkt. No. 50, p. 25 (Pg. ID 3311). But even if true, this again only goes to the accuracy of Sargent's opinions, not their admissibility. *See Ocwen*, 335 F. Supp. 3d at 956. Indeed, Defendants can challenge the factual basis of Sargent's findings on cross-examination, or by presenting their own contrary evidence. Accordingly, the Court will not exclude Sargent's testimony on this ground.

<blockquote>
v.    <u>**Arguments #5-7:**</u> **Sargent did not Account for Incremental Expenses, did not Consider Plaintiff's Profit Margin, and did not Determine any Incremental Value of Incomplete Work.**
</blockquote>

Defendants' final three arguments overlap, and thus, can be addressed together. First, they argue that Sargent did not account for all of Avomeen's incremental expenses when he conducted his EBITDA damages calculation, and therefore, conflated gross revenue with net profit. Second, without providing much explanation, Defendants argue that Sargent failed to consider Avomeen's profit margin. Last, Defendants argue that Sargent failed to account for the incremental value of incomplete work.

As an initial note, some of Defendants' arguments are difficult to piece together. But from what the Court can glean, each of these arguments challenge the factual basis underlying Sargent's expert opinions. Again, this goes to

credibility and accuracy, not admissibility. *See Ocwen*, 335 F. Supp. 3d at 956.

For that reason, the Court will not exclude Sargent's testimony.

### B. The Court will Grant In Part and Deny In Part Plaintiff's Motion to Exclude Certain Testimony of Defendants' Expert Witness, Rodney L. Crawford [#47].

Like Defendants, Plaintiff asks the Court to exclude certain testimony of

Defendants' expert witness, Rodney L. Crawford. Plaintiff specifically focuses on

three opinions proffered by Crawford:

- Avomeen recognized revenue on a completed contract basis, which under Generally Accepted Accounting Principles is defined as substantial completion.

- For most projects challenged in Plaintiff's Expert's Report, there was a reasonable basis to recognize revenue because the projects were substantially complete.

- Any damages that Plaintiff recovers should be reduced to account for the 40% equity interest that Defendants have retained in Avomeen.

*See* Dkt. No. 47, p. 11 (Pg. ID 3070). The Court will address each of Plaintiff's

challenges to these opinions in turn.

1. <u>Crawford's Opinion that Avomeen Recognized Revenue on a Completed Contract Basis is Grounded in the Record.</u>

Defendants' expert, Rodney L. Crawford, is prepared to testify that under

Generally Accepted Accounting Practices ("GAAP"), a contract may be regarded

as completed if remaining costs and potential risks are insignificant in any amount.

From this, he will conclude that Defendants did not run afoul of GAAP standards

by recognizing revenue before 100% completion of a project.  Plaintiff, however, asserts that application of this "completed contract method" is inappropriate for two reasons.

First, Plaintiff argues that the GAAP standard to which Crawford cites, ASC 605-35-05-01, relates only to contracts involving the construction of facilities, the production of goods, or the provision of related services.  *See* Dkt. No. 66-3, p. 12 (Pg. ID 4933) (605-35-05-1: "This subtopic provides guidance on the accounting for the performance of contracts for which specifications are provided by the customer for the construction of facilities or the production of goods or for the provision of related services.").  Plaintiff maintains that Avomeen's business of chemical testing and analysis does not fall within these confines.  Hence, Mr. Crawford's testimony should be excluded for that reason alone.

Defendants respond by arguing that Plaintiff reads the applicable GAAP standard too narrowly, pointing to ASC 605-35-15-3, which instructs that contracts covered by this standard are not limited to those listed.  *See id.* at p. 18 (Pg. ID 4939) (605-35-15-3: "Contracts covered by this Subtopic include, but are not limited to . . .").  Further, Crawford addressed Plaintiff's exact argument during his deposition:

> Q: So the GAAP standards that you are referring to in paragraph 28 by FASB's direction are applicable to businesses that are very dissimilar to Avomeen, correct?

A: This specific guidance is basically directed primarily to contractors who do construct facilities and provide -- or produce -- produce goods, but there is no comparable guidance in terms of a detailed proportion of GAAP that deals specifically with companies that are in the business of providing service contracts. So historically accountants have always looked to this guidance in terms of mechanics of applying completed-contract or percentage-of-completion accounting in contexts that are outside the strict bounds of, say, construction companies.

Q: But at least FASB, when it came up with this guidance, was not articulating that the completed-contract method that you are referencing in your report would be applicable outside of the businesses that are involved in the construction of facilities or the production of goods or for the provision of related services, correct?

A: The FASB doesn't have a broader defined application of this but I can tell you that in the accounting profession this guidance has always been used for contracts that fall outside of those strict bounds. And if you go to the general language of the revenue recognition provisions which Mr. Sargent references, the term "substantial completion" in ASC605-35 is not utilized, but the same concept, which is substantially accomplished, is basically there.

Dkt. No. 67-3, pp. 79-80 (Pg. ID 5331-32).

Despite Crawford's reference to a GAAP standard that, on its face, applies primarily to construction contracts, it appears that the general principle underlying the "completed contract method" is recognized in other sections of the GAAP, including in ASC 605-10-25-1, which Plaintiff's own expert cites in support of his opinions:

The recognition of revenue and gains of an entity during a period involves consideration of the following two factors, with sometimes one and sometimes the other being the more important consideration:

    **(a)Being realized or realizable**. . . .

    **(b) Being earned**.  Paragraph 83(b) of FASB Concepts Statement No. 5, *Recognition and Measurement in Financial Statements of Business Enterprises*, states that revenue is not recognized until earned.  That paragraph states that an entity's revenue-earning activities involve delivering or producing goods, rendering services, or other activities that constitute its ongoing major or central operations, and ***revenues are considered to have been earned when the entity has substantially accomplished what it must do to be entitled to the benefits represented by the revenues***.  That paragraph states that gains commonly result from transactions and other events that involve no earning process, and for recognizing gains, being earned is generally less significant than being realized or realizable.

Dkt. No. 66-3, p. 2 (Pg. ID 4923) (emphasis added).  Though the "substantially accomplished" language does not exactly match that which Crawford uses, it still suggests that one important consideration with respect to revenue recognition is whether a project is "substantially completed."  Thus, the Court finds support for Crawford's assertion that the completed contract method can be applied outside of construction and production contracts.  But Plaintiff is free to challenge this notion on cross-examination.

Plaintiff's second argument is that Crawford's reliance on the completed contract method is not based on sufficient facts or data from this case.  For example, Plaintiff contends that the "completed contract method" is inconsistent with Defendant Thanedar's representation that Avomeen recognized revenue only upon 100% completion of a project.  While Defendants do not explicitly refute this fact, they argue that Crawford's findings are relevant because one issue in this case

will be whether Avomeen's revenue recognition practices were materially altered leading up to its sale; and thus, Crawford should be able to testify that Defendants consistently observed GAAP standards, notwithstanding Defendant Thanedar's representations. The Court will agree.

Here, the jury will be asked to decide whether Defendant Thanedar's alleged misrepresentations about Avomeen's revenue recognition practices were *material in nature*. (Emphasis added). One potential way for Defendants to undercut Plaintiff's case is to demonstrate that Avomeen's revenue recognition practices remained in substantial compliance with the GAAP's completed contract standard leading up to its sale, even if there was some variance along the way. This will be the aim of Crawford's testimony. *See* Dkt. No. 67-3, p. 22 (Pg. ID 5274) (Crawford Dep.) ("Well, the entire context of the report is to analyze whether there is any evidence that there was a material change . . ."). Furthermore, Crawford explained how he reached his expert opinion:

> Q: What is that opinion based on, the idea that Avomeen generally utilized the completed-contract method for revenue recognition based on substantial completion of projects?
>
> A: Based on my review of the contracts that are being questioned in this case, my review of revenue recognition in the prior period, September 30, 2015, my review of Mr. Sargent's report where he analyzed revenue recognition throughout the 12 months preceding September 30, 2016, and my communications with Dr. Thanedar and I -- I basically haven't seen anything that suggests otherwise.

*Id.* at p. 53 (Pg. ID 5305). To the extent Plaintiff asserts that Crawford ignored pieces of the factual record, it can address this on cross-examination. *See Hocking*, 90 F. Supp. 3d at 752 ("Where the reliability of the evidence is in dispute, it is more appropriate for a judge to admit the evidence than to keep it from the fact-finder because vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.") (internal quotations and citations omitted). For now, however, the Court finds that Crawford conducted a sufficient investigation and adequately applied his expertise in accounting to the facts of this case. *Cf. Gonzalez*, 2015 WL 4771096, at *6 (rejecting portion of expert testimony suggesting plaintiff complied with industry standard because expert did not conduct his own investigation to support opinion).

2. <u>Crawford is Qualified to Testify about whether Projects were Substantially Complete for Revenue Recognition Purposes.</u>

Crawford is also prepared to testify that for most of the projects that Plaintiff's expert challenges as being prematurely recognized for revenue purposes, there was a reasonable basis to conclude that the projects were substantially complete, and therefore, properly recognized. Plaintiff argues that Crawford lacks the knowledge, skill, experience, training, or education to offer this opinion at trial. But Plaintiff's primary contention is that Crawford relied in part on the assistance

of Defendant Thanedar and, in essence, has offered Thanedar's opinion as his own. The Court will disagree.

Importantly, Federal Rule of Evidence 703 expressly permits an expert to base his or her opinion on facts or data that they have been made aware of or personally observed. *See* FRE 703. Hence, there is nothing inherently wrong with Crawford consulting Defendant Thanedar. Moreover, Plaintiff overlooks the fact that, in addition to consulting Defendant Thanedar on a limited number of the projects, Crawford and his team noted with extensive detail their reasons for concluding that a project was substantially complete at the time revenue was recognized. *See* Dkt. 67-5, pp. 58-68 (Pg. ID 5706-16). A review of their report reveals that they relied on ample data from the record, and considered criteria similar to that of Plaintiff's expert, J. Bradley Sargent. *See id.* Accordingly, the Court finds that Crawford, who like Sargent, is no expert in chemical analysis, has a sufficient basis to testify about his findings. To the extent Plaintiff contests the factual underpinnings of these findings, it can do so on cross-examination.

3. <u>Defendants have not Provided a Sufficient Basis for Crawford to Opine that Plaintiff's Damages Award Should be Reduced by Forty Percent.</u>

Finally, Crawford is prepared to testify that any damages that Plaintiff receives should be reduced by forty percent. The reason being, to account for the forty-percent equity stake that Defendants retained in Avomeen after the transaction. Plaintiff argues that Crawford fails to provide an adequate explanation

in support of his opinion.  Defendants refute this, setting forth three reasons why they believe Crawford's opinion is appropriate.

First, Defendants argue that reducing Plaintiff's damages would reflect the economic realities of the parties' transaction (i.e., Thanedar retained a forty-percent interest in Avomeen).  Second, Defendants argue that, as low-priority equity holders in Avomeen, they would not derive any benefit from a potential recovery by Plaintiff.  Third, Defendants argue that "when Mr. Thanedar sold Avomeen, he was significantly paid in equity in the new Avomeen Holdings, and if that equity was overvalued, then the damages should reflect the overvaluation." Dkt. No. 67, p. 28 (Pg. ID 5061).  The Court finds Defendants' arguments neither informative nor persuasive.

Critically, the "party offering an expert's opinion bears the burden of establishing the admissibility of that opinion by a preponderance of the evidence." *Keyes*, 335 F. Supp. 3d at 955 (citing *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001)).  Here, Defendants have failed to explain their position with any clarity.  For that reason, the Court will exclude Crawford's testimony to the extent he opines that Plaintiff's damages award should be reduced by forty percent.

## IV. CONCLUSION

For the reasons stated herein, the Court will DENY Defendants' Motion [#49/50] and GRANT IN PART AND DENY IN PART Plaintiff's Motion [#47].

IT IS SO ORDERED.


Dated:        August 1, 2019

s/Gershwin A. Drain
HON. GERSHWIN A. DRAIN
United States District Court Judge


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, August 1, 2019, by electronic and/or ordinary mail.

s/Teresa McGovern
Case Manager